Our next case is 2017-1433, Knauf Insulation v. Johns Manville Corporation. Mr. Larson, please proceed. Thank you, Your Honor. May it please the Court, my name is Joshua Larson, and I'm representing the appellants, Knauf Insulation. Your Honors, the Board made two fundamental errors in reaching its conclusion that GOGEC anticipated Claim 1 of the 210 patent and its dependent claims. First, the Board failed to address all of the claim language and find that claim language in the references it is required to do in an anticipation analysis. After the preamble of Claim 1 of a substantially formaldehyde-free binder solution and the partially-closed transition of consistent... Did you pronounce that GOGEC? We've been saying GOGEC, Your Honor. GOGEC. Okay. You argue that the PTAB erred by ignoring the refractory materials of GOGEC. That's correct, Your Honor. But the PTAB determined that the binder solution was distinct from the refractory materials. What language in GOGEC shows that the PTAB was incorrect to treat the binder solution as distinct from the refractory materials? Yes, Your Honor. So the disclosure in GOGEC does not ever disclose an example or an embodiment where the binder solution exists separately from the rest of the materials that are used to form his refractory blades. In each of the four examples in GOGEC, which are in Column 2 of that reference and go over to Column 3, GOGEC describes the manufacturing method as slurrying together all of the components. That includes the sugar and the adjunct material, the ammonium sulfate, but also other materials, the refractory materials like rockwool, the binding clay that's used in that reference, asbestos fines, and other materials that he lists. And so GOGEC's method that he teaches is to combine all of these materials in a slurry. She describes it as slurried in 600 to 1,000 parts water. And, Your Honor, where the board erred in terms of applying our claim to that language is that it looked, as you just said, the board seemed to say, well, you can take the solution or there is a solution determined that found that there was a solution there that is somehow conceptually separable from the rest of what GOGEC teaches. He doesn't teach that. He teaches that all these materials are mixed together. What about the fact that he says that the binder is just two of those ingredients? Well, Your Honor, in that respect, he does, in Column 1, does describe the binder as consisting essentially of a sugar and an adjunct, and the board did focus heavily on that. But that statement, as explained by the evidence in the record, is not exclusive. That's not the only binder of GOGEC. That is a dispute, a factual dispute we've had between us and the petitioner and that the board addressed. And in particular, the testimony in this case, we submitted extensive expert testimony from our expert, Professor Smith, who is an expert in refractory materials and the type of bricks that GOGEC is describing. And as he testified, he explained that these type of materials, these bricks, are always made with clay as a binder as well. That GOGEC's invention was not to eliminate the clay. It was to instead replace a transient, there's kind of a transient binder that's used before the bricks are fired to help hold the material together in a mass so that it can be fired in the kiln. And the prior art before GOGEC used starch, which unfortunately gave off lots of obnoxious gases, tear gas. And he replaced that with this transient sugar adjunct binder. But he didn't eliminate the clay from bricks. He didn't invent bricks made without clay. Clay was still a part of his bricks as is shown in all four of the examples in GOGEC. And he confirmed this fact. GOGEC himself confirmed this fact during prosecution. I point the court to Appendix 1836, which is an excerpt from the prosecution history of GOGEC. He had, in GOGEC, there's a Claim 2 that says, which was mentioned by the board as well, a refractory insulating block consisting of a cemented mass obtained by baking 100 parts of refractory materials consisting essentially of rock wool and a sugar inorganic adjunct binder. The board also relied on that disclosure in Claim 2 as supposedly disclosing a brick made without clay. During the prosecution of the GOGEC reference, the Patent Office rejected that claim under 112 and said, you haven't explained how to make a brick without clay. To which GOGEC responded, and again that's Appendix 1836, his representative responded, no, we haven't claimed a brick made without clay in Claim 2. That consisting essentially of, in that claim, is open to the inclusion of other common refractory materials and explained that it was old in the art to use things like clay and iron oxide and various other materials as part of the bricks. That that's not what GOGEC had invented and he wasn't excluding those. I think that's an exodus. I'm sorry, your Honor? I think that's an exodus. Bricks without straw. Bricks without clay. My co-counsel reminded me that Sherlock Holmes also demanded data, data, data. I can't make bricks without clay. And your Honor, in this case... In the Blue Brief, you cite a couple of articles to argue that formaldehyde could be present, may very well be present in GOGEC, you say, so that it doesn't teach the substantially formaldehyde-free limitation. Yes. And you cite two articles. One is in the MacDonald Farm Journal and one's in the Louisiana Planter. And the Louisiana Planter one discusses the presence of formaldehyde in sugar at a particular Louisiana farm in an experiment in which formalin was used. And the other reports finding some formaldehyde in certain untreated sugar syrups, such as maple sugar, corn syrup, and clover honey, in relation to a maple tree tap hole experiment. The Louisiana Planter article was published about 50 years prior to GOGEC. And one, I want to know why that's relevant to what was understood and disclosed by GOGEC. Do either of those articles speak generally to the presence of formaldehyde in dextrose, which is the primary reducing sugar disclosed in GOGEC, and if so, where? And why are either of those articles more probative than Herxhohn's declaration? Yes, Your Honor, I'll try to hit each of those questions. And if I may, I'd like to just briefly, when I'm answering your questions, briefly state that the primary issue, in our view, with the board's analysis there, they agreed that substantially formaldehyde-free was a limitation of the claim, although it appears in the preamble of Claim 1. But they found the primary error that they made was shifting the burden to Kanoff Insulation to disprove the absence of formaldehyde from GOGEC. The statute here, Section 315, says that... Well, time out. I really thought they just relied on JM's expert and said, look, who said GOGEC doesn't disclose formaldehyde anywhere in it, nor does, and this is where the expert opinion matters, nor does it disclose any components that under the claimed processes would produce formaldehyde. So that doesn't seem like a burden shifting. That seems like an acknowledgment that JM's expert made an affirmative case that GOGEC doesn't disclose formaldehyde or any components that would be known under the claimed processes to produce formaldehyde. So what's wrong with that? I mean, it's a fact-finding. The expert did say all those things, so... The expert did say those things. As we argued to the board, Your Honor, his opinion, in our view, is conclusory on that point. Yeah, but the only thing you produced were these... He's an expert. He says, in my expert opinion, none of these components would produce formaldehyde in the claimed composition or in the claimed process steps. When you say it's conclusory, I mean, how do you prove a negative? He has to go find an article that shows, here are these particular sugars used in this process, and look, no formaldehyde was produced. He's an expert. This is exactly the kind of thing that experts are relied upon for. Your Honor, you're correct. He is an expert. But in this case, he is an expert in the area of chemistry. There's no evidence that he has expertise in what was or was not included in industrial sugars. Did you challenge...dalbert him, basically? Did you say he isn't qualified to give this expert testimony and therefore it can't be relied on by the board? And did you appeal such a challenge if you made one? Because now you're challenging his credentials on appeal, and I didn't understand there to be an appeal issue related to whether or not the board was permitted to rely on his testimony. Your Honor, we did make a motion to exclude his testimony as failing to meet the requirements of Rule 701 and 702 below with the board. We lost that motion with the board. They did not exclude his testimony. That was based on credentials. We did not specifically raise that issue in our brief. So you can't really argue that. Judge Walk, I can't recall if you had another question in that regard that I didn't get to. Yeah, he never got to anything about the articles and why they were in any way relevant or useful. Sorry. I stole him. Sorry about that. Well, Your Honor, in this case, we had submitted those articles to show that just that Gogek, as described, he uses industrial sugars, industrial syrups to supply sugar. And that around that time period, I agree that there are several decades between one of those articles and Gogek, but that it wasn't uncommon or unheard of for industrial sugars to use formaldehyde as a preservative. That was why we had submitted that. Your Honors, in this case, the board also erred in making a finding that Gogek also did not require clay in his bricks, as we've discussed. And as we've explained in our briefs, we believe that that finding, in fact, is contrary to the evidence of the record, not supported by substantial evidence. In this case, we submitted an expert declaration from Professor Smith who explained why that couldn't be the case, that the bricks would not have held together, that the sugar adjunct binder would get burned off when the bricks were fired in the kiln. And the other side, Dr. Versa-Porensek agreed with us on that. He agreed that that sugar adjunct binder would not withstand the furnace conditions and therefore couldn't be the permanent binder of Gogek. Your Honors, I'd like to reserve the remainder of my time for rebuttal, if that's okay. Yes, you may. Thank you. Let's hear from Mr. Reed. Please proceed. Good morning, Your Honors. May it please the Court, Christopher Reed on behalf of Appalese. The binder solution disclosed in Gogek is a sugar inorganic salt. That is the only binder solution disclosed in Gogek. Isn't the binder disclosed in Gogek is the dry ingredients are the two components that are claimed? But what support do you have for the idea that relying on the consisting essentially of language in the claim? What is your best argument to support the conclusion that the binder solution only includes those two components? With respect to that in Gogek, Your Honor, it does disclose in Gogek the two binder components. What identifies as the binder components are subsequently slurry in the 600 to 1,000 parts of water. Where does it say that they are slurried alone without the clay and other elements? It doesn't say they're slurried alone. They are in a mixture that involves the insoluble ingredients, the refractory materials. But it does go on to describe, after saying it's slurried in 600 to 1,000 parts of water, it goes on to describe how it's pressed. And the excess water comes off of that. The pressed water comes off of that. And that pressed water is then recycled so that you can use the sugar and the inorganic salt that are contained in it. And the insoluble ingredients remain in the pressed brick that has been formed. So that demonstrates that the only things that are dissolved in that water, and thus the only things that form a solution, are the sugar and the inorganic salt, exactly what Gogek characterizes as the binder. The board didn't really discuss that aspect in its opinion, did it? It did not go into that level of detail. Right. It cited that passage talking about the 600 to 1,000 parts of water. And it relied on Dr. Hirsikorn's testimony that that quantity of water, given the relative amount of binder that's used, three to seven parts, depending on the example, versus the 600 to 1,000 parts of water, that that's a vast quantity of water. Do you know offhand what that page number is in the appendix that you're referring to in the PTAB's decision? Okay. So if we turn to page appendix 26, the PTAB summarizes the arguments presented by us by Petitioner in reflecting that Gogek discloses the in-water limitation because it discloses the 600 to 1,000 parts of water, an amount of water that would easily dissolve the binder components. And that is referencing back to Dr. Hirsikorn's testimony, which was Exhibit 1006 below, where he said that that quantity of water would easily dissolve the quantities of sugar or sugar and inorganic salt that are involved in Gogek. In the red brief in a passing way, 23 and 24, you challenged the PTAB's conclusion that the preamble, which contains substantially formaldehyde-free language, is limiting. Shouldn't that have been raised in a cross appeal if you didn't like it? That may be correct, Your Honor. And for purposes of this particular appeal, even though we stand by that position, we think it's effectively moved based on the substantial evidence on which the board relied, finding that it was formaldehyde-free. We don't need to read too much if we find the claims anticipated. That's correct. Including the Graham package. That's correct, Your Honor. So your question, Judge Stoll, raises a good point in the sense that what we need to focus on here is the binder solution. And one of the things that gets confused, at least on the appellant's briefs, is the idea that we're talking about a brick, but we're not talking about a brick. We're talking about a binder solution. And the refractory materials that are described in GOGEC, their own expert conceded, are insoluble. And by being insoluble, they can never form part of a solution. A solution implies things are dissolved in water. Their own expert said, yes, you're right. Adding a clay or adding asbestos to water never creates a solution. At most, it creates a suspension. So the only solution, despite the fact that they're all mixed together at one time, the only solution that's created by that process is the sugar and the inorganic salt being dissolved in water. And that's the exact binder solution that's claimed in Claim 1. Can you go through again with me on this appendix, page 25 and 26? The question that Judge Stoll asked is the hardest part of this case for me as well, which is namely whether GOGEC discloses a binder solution that meets with the consisting, essentially, of language. So tell me again that sentence at the top, which begins, Petitioner argues, and then it cites your brief. I mean, is it your view that that's a fact-finding by the board, a sentence that begins, Petitioner argues? Where is the fact-finding by the board about the solution? Because that sentence is clearly just articulating your argument, not adopting your argument. It doesn't even say, Petitioner argues persuasively. You know, like there's nothing that would make me think that. So is it a different sentence that you think makes it clear that they've adopted your solution argument? Well, Your Honors, with respect to the board and how it constructed its analysis of a particular decision, it tended to set forth the evidence presented by both sides and then make a decision based on that evidence. And that's what we see here. So although it doesn't say, Petitioner's persuasively argued X or Y, what it does— It says, Patent Owner argues. No, I'm sorry. It says, Patent Owner argues, and Petitioner replies, and then they say, We've addressed Patent Owner's argument above, if we're looking at the same paragraph. In the sense that it lays out the evidence, and then it makes a decision based on the evidence, and that's the substantial evidence, and the implication there, that's the substantial evidence on which it relied. It's just this sentence here on page A26 where you say, We have addressed Patent Owner's argument above and are persuaded that GO-GET enables a binder as claim to claim one. And you're saying that's what should be understood by this court to be an agreement with the statement that is at the top of page A26. That's right. And since we're talking about the same point, can you point me exactly where you're reading from, Your Honor? Okay. So on page A26, the last sentence in the first full paragraph. Correct. It does reference back to the more fulsome discussion of Clay that had taken place earlier. On the prior page, yeah. Where it says claim one and then goes through the amounts and what's a binder and what's not. Actually, going back to Clay at page 10. Okay. Where it talks about the starting at page 10 and continuing on. I mean, wouldn't a better sentence even be the one at the bottom of the next paragraph, also on page 26, where it says, As discussed above, we are persuaded by Petitioner's argument on this point that GO-GET's binder consists essentially of reducing sugar and a material which can be ammonium sulfate salt in water and that the asbestos fines are not required. Maybe. Yes, and that's where I was going next, Your Honor. Thanks for highlighting that. By virtue of saying that, it's referencing back to that argument that we made and effectively adopting that argument in the sense of the evidence in which it relied in finding that the binder was dissolved in water. It couldn't reach that conclusion without that evidence we cited previously. And the expert testimony that you think that this is referring back to is on appendix page 1224, paragraph 70. Do I have that right? Dr. Hirschhorn's testimony. Dr. Hirschhorn's testimony. That's correct. I think we have your argument. Do you have any other points that you want to make before you sit down? Your Honor, I just want to address claims 13 and 14, which have not gotten much attention yet, and that is a claim construction issue. Everything we've talked about thus far previously really is fact-finding. It's a question of fact, and it should be given deference to the Board on their substantial evidence in which they relied. This is a claim construction argument. Just to be clear, you're free to do that if you think you need to, but, you know, if they don't address something in the opening position, and then you do address it in the opposition, they get to address it in their rebuttal. If you don't address it and you sit down now, they don't get to actually talk about it in their rebuttal. Fair enough. I'm done, Your Honor, on that point. Very good. Let me raise one more point on the initial point. We'll see if it's necessary. Go ahead. What's your next point? Next point goes to the idea of clay, which was raised in the opening, and that's the point that the 210 patent itself, you know, we're talking about the 210 patent itself, talks about using a sugar inorganic salt binder on a variety of materials, and one of those materials is what's called foundry sands. And why is that important? Because foundry sands, the main component of foundry sands is bentonite clay. So if clay affected the material properties of the solution, then what's described in the 210 patent itself isn't correct, and that can't be the case. The point is bentonite clay does not affect the material properties of the binder solution. It can't be dissolved. It doesn't affect the binder solution. The solution is inorganic salt, sugar. That's what's in GOGEC. For that reason, the board should affirm. Thank you. Thank you very much. Do you have some rebuttal time, Mr. Larson? Yes, thank you, Your Honor. You know, you had the opportunity to quote Sherlock Holmes about the 2% solution or elementary. Your Honor, I'd like to frame my rebuttal with something I heard opposing counsel say that I think the parties are somewhat in agreement about. I can at least agree with his statement that the 210 patent, in this case, it's not about a brick. It's about a binder solution. The 210 patent claims a binder solution, and GOGEC does not disclose that binder solution. While it discusses various binders, it does so in the context of its bricks and in the context of a slurry that includes binding clay, sugar, adjunct, asbestos, and many other materials. That's important for purposes of anticipation because the SSO of anticipation is prior invention, and the board had to find, and JM had to find, an embodiment in GOGEC that discloses the same invention arranged as in our claim. I mean, but just go to the heart of it. Don't beat around the bush. I mean, your problem is Hirschhorn's testimony, namely in paragraph 70, where he basically says a solution is inherently present because this amount of water would easily dissolve all the binder components. I mean, that's your problem. You've got to overcome that testimony or explain to us why it was inappropriate for the board to rely on that testimony for its finding. So, Your Honor, on that point, with his testimony there, respectfully, I think that the issue is slightly different because even with his testimony, if the board credited his testimony that there's inherently a solution present, it still does not meet the language of our claim. And the reason why is that we claim that we have a binder solution consisting essentially of another solution, namely a solution obtainable by dissolving two components, a sugar and an ammonium salt in water. Now, if our claim was open-ended, if it said comprising, we'd have a different situation here. Then you could look at the binder solution, the slurry of GOGEC. But what's the problem? What does the solution in GOGEC contain, the solution contain that exceeds the consisting essentially of problem? So, Your Honor, even with the sugar and the adjunct being dissolved in water in GOGEC, if that's present, that may potentially, for the sake of argument, meet our solution obtainable by dissolving those two components. We think there's scant evidence of that in the record. But even with that fact, then the claim says that the binder solution, that's claimed to be substantially free from allied free binder solution, has to consist essentially of that other solution. There can't be other things present in the binder mixture that are going to affect the basic knowledge characteristics. In the binder solution, let's be precise, because a mixture could imply something that remains solid being present in there, whereas a solution cannot. A solution requires stuff that dissolves, or at least that's what this record suggests. Your Honor, I think the word solution, as we use it actually in the first instance, is a little broader. And the distinction there is, in the second instance, we say it's a solution obtainable by dissolving, meaning the components have to be fully dissolved in the solution. We're talking about molecular disassociation in the solution. Right. How does one of Ordinary's felony art understand the word solution as opposed to a mixture? Your Honor, I think with the solution, it means that there's actual at least some dissolution of the components, maybe not full. My understanding would be that the word solution can include both dissolved and undissolved components by itself, as opposed to where, as a mixture, there isn't really any dissolution of one material and the other. It's just a mixture of those components together. So, Your Honor, in this case, GOGEC fails to disclose. Doesn't that necessarily imply at least soluble, if not dissolved? Your Honor, I'm not sure I follow your question. When you said a solution, it doesn't have to be entirely, I'm trying to remember the word from chemistry, that is 100%. Right. But the stuff that hasn't actually dissolved has to be soluble to be part of the solution. I'm not sure that I know the answer to that question, Your Honor, but I believe that the other material does have to be dissolved. I see my time is out. Okay. I thank both counsel for their argument. I have to be honest, I didn't think a BRIC case could be as complicated as this particular one has turned out to be, but I thank both counsel for their helpful arguments to the court. Thank you very much, Your Honor. It's not a BRIC case.